# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN GHERTLER, | : | CIVIL NO. 1:11-CV-526 |
| Petitioner, | : | (Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN DAVID EBBERT, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

**I.    Introduction**

In this habeas corpus petition, the Petitioner, Jonathan Ghertler, belatedly invites us to examine the results of a prison disciplinary hearing which led to the forfeiture of good time for this federal prisoner more than four years ago, in September of 2006, following Ghertler's escape from a halfway house.

During those intervening four years a great deal has occurred in Ghertler's life. Ghertler completed the sentence which he was serving at the time of his escape and this 2006 disciplinary citation. Ghertler was then indicted on new federal fraud charges, convicted, and sentenced to an additional 162-month term of imprisonment. It is this new, and unrelated, jail term that Ghertler is now serving. Thus, Ghertler is currently serving an entirely new, and different, sentence than the sentence which was

the subject of the 2006 disciplinary citation that lies at the heart of this tardy habeas petition.

Because we find that Ghertler has already completed service of the sentence which was the subject of the disciplinary proceedings that he now seeks belatedly to challenge we conclude that Ghertler's petition–which challenges prison discipline that arises out of a sentence which has been fully discharged–should be dismissed as moot.

## II.     Statement of Facts and of the Case

The pertinent facts can be simply stated: On December 5, 2002, the Petitioner, Jonathan Ghertler, was sentenced by the United States District Court for the Southern District of New York to a 71-month term of imprisonment, followed by a three-year term of supervision, for wire fraud. (Doc. 7, Ex. 1, Declaration of Joseph McCluskey, ¶ 4 and pp. 6, 8, Attach. 1, Sentence Monitoring Computation Data.) Three and one-half years later, on July 11, 2006, while serving this sentence at the Federal Correctional Institution in Yazoo City, Mississippi, Ghertler was transferred to a halfway house with the Orlando, Florida, Community Corrections Office. (Doc. 7 Ex. 1, ¶ 4 and p. 17, Attach. 2, Inmate History Admission-Release.)

On September 15, 2006, Ghertler escaped from the halfway house, remaining at large for approximately two months. In prison, few infractions are viewed with more severity than an escape. Thus, it is hardly surprising that an incident report was issued by prison officials charging Ghertler with absconding from custody. While

Ghertler was a fugitive, on September 18, 2006, a disciplinary hearing was conducted *in absentia* for Ghertler on this infraction and he was found guilty of escaping from custody, a conclusion which flowed directly from Ghertler's unexplained and unexcused absence from the halfway house.( Id. ¶ 5 and p.21, Attach. 3, Inmate Discipline Data.)  Ghertler was sanctioned to a ten-day loss of good time credits, the loss of a sixty days of non-vested good time credits, and was recommended for a disciplinary transfer as a result of this misconduct finding. (Id.)

Ghertler was located and taken back into custody on November 28, 2006. However, because Ghertler was, by the time of his escape, nearing the end of his term of imprisonment, he was not designated to any specific Bureau of Prisons' institution to serve the remaining months of his sentence. Instead, Ghertler was held in various holdover facilities until his release less than four months later, on March 14, 2007. (Id. ¶ 5 and p. 16, Attach. 2, Inmate History Admission-Release.)

At the time that Ghertler was returned to custody in November 2006, the Bureau of Prisons had a policy, Program Statement 5270.07, governing disciplinary proceedings in escape cases, which provided that:

> [w]hen an inmate escapes or is otherwise absent from custody, the Discipline Hearing Officer shall conduct a hearing in the inmate's absence at the institution in which the inmate was last confined. [W]hen an inmate returns to custody following absence during which sanctions were imposed by the DHO (or the predecessor Institution Discipline Committee (IDC)), the Warden shall have the charges reheard before the Discipline Hearing Officer ordinarily within 60

>days after the inmate's arrival at the institution to which the inmate is designated after return to custody, and following appearance before the Unit Discipline Committee at that institution.

(Doc. 7, Program Statement 5270.07, Chapter 7, page 5, Ex. 2.)

Because Ghertler was never designated to any specific institution to complete the final months of his sentence, but was held as a temporary holdover inmate in various jails, he was never afforded the second hearing contemplated by this policy. Nor did Ghertler ever timely protest the failure to afford him such a hearing. Instead, Ghertler simply elected to complete the service of this jail term, and was released in March 2007.[1]

---

[1] According to Ghertler, he was initially released in January of 2007, and then re-incarcerated several days later and held until March 2007. (Doc. 8, pp.1-4.) Ghertler is harshly critical of the conduct of corrections officials during this two-month period which occurred more than four years ago, alleging that prison officials provided him with incomplete and conflicting information regarding his custodial status and prison disciplinary history. Ghertler also complains that prison officials were not promptly forthcoming in 2008-09 in clarifying the status of his prior sentence when he returned to federal custody. This confusion may, in part, be an understandable product of the fact that Ghertler has received multiple sentences, and been cited for numerous disciplinary violations, over the past fifteen years while he has been repeatedly in and out of federal custody. Indeed, it appears that Ghertler sustained theft and fraud convictions in federal courts in Alabama, Florida and New York in 1995, 1998, 2002, and 2009. (Doc. 7, Attach. 1.) Ghertler also has been cited as least six different times for disciplinary infractions while in federal custody. (Id., Attach. 3.) Furthermore, whatever the merits of these complaints concerning events in 2007 may have been, it is undisputed that Ghertler was released from custody on this particular charge in March 2007 and then was later re-incarcerated on new and different charges in January of 2008. (Doc. 8, p.4.)

Ten months later, on January 17, 2008, Ghertler returned to federal custody to face new federal fraud charges. (Id. ¶ 6 and p. 16, Attach. 2, Inmate History.) As a result of this latest foray into crime, on January 27, 2009, Ghertler was sentenced by the United States District Court for the Middle District of Florida to a 185-month term of imprisonment for wire fraud, a sentence that was later reduced to a 162-month term of imprisonment. (Id. ¶ 6 and pp. 5, 7, Attach. 1, Sentence Monitoring Computation Data.) This new criminal conduct by Ghertler, in turn, led to a revocation of his supervised release on his prior federal fraud conviction. Thus, on January 28, 2010, while serving the 162-month term, Ghertler was also sentenced by the Southern District of New York to an 8-month term of imprisonment for violating his supervised release, a sentence which was ordered to run concurrently with this separate 162-month term for these new criminal charges. (Id. ¶ 6 and p. 6, Attach. 1, Sentence Monitoring Computation Data.) Ghertler now appears to have completed the service of this supervised release sentence, and is simply serving his new sentence for his latest fraud offenses. He is scheduled to be released on this new sentence on November 17, 2019, via good conduct time release. (Id. ¶ 6 and p. 7.) Indeed, Ghertler himself acknowledges that this petition can in no way affect the length or duration of his current jail term, stating that in any event he will "still be released on November 17, 2019." (Doc. 8, p.11.)

It was only after Ghertler returned to prison to begin serving this new sentence for the additional crimes which he committed that he began to reflect upon the discipline imposed upon him in 2006 for his last escape. Thus, Ghertler did not appeal the September 18, 2006, disciplinary decision or the sanctions imposed for the escape until May 9, 2010, three and one-half years after this discipline was imposed upon him. (Id. ¶ 7.) Ghertler's belated grievance was denied by the North Central Regional Office on June 21, 2010. (Id. ¶ 7 and pp. 24-26, Regional Administrative Remedy Appeal and Part B -Response.)  He then appealed that denial to the Bureau of Prisons Central Office on July 14, 2010, and his appeal was denied by the Central Office on December 22, 2010. (Id. ¶ 7 and p. 27, Response to Central Office Administrative Remedy Appeal.)

Ghertler then filed the instant habeas corpus petition on March 21, 2011, four and one-half years after his escape; four years after his release from custody on the sentence giving rise to that escape; 38 months after new charges were lodged against him; 26 months after he was convicted of those new charges; 14 months after his supervised release was revoked on his original charges based upon his new misconduct; and 6 months after he completed service of this supervised release revocation sentence. (Doc. 1.) Because Ghertler has fully discharged the sentence which he now seeks to collaterally attack, it is recommended that his petition be dismissed.

## III. **Discussion**

In this case, the respondents are correct in suggesting that this case is now moot and should be dismissed. The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).

There is a constitutional dimension to the mootness doctrine.

> Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. (citing Allen v. Wright, 468 U.S. 737, 750-751 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471-473 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241 (1937). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis, 494 U.S. at 477-478. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477). Incarceration satisfies the case or controversy requirement; it is a concrete injury caused by a conviction and is likely to be redressed by invalidation of the conviction. Id. Once a sentence has expired,

however, some continuing injury, also referred to as a collateral consequence, must exist for the action to continue. Id.

Burkey v. Marberry, 556 F.3d 142, 147 (3d. Cir. 2009)(dismissing habeas petition as moot).

In the context of habeas corpus petitions mootness questions, therefore, often turn on straightforward factual issues. Thus:

> [A] petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition. Lane v. Williams, 455 U.S. 624, 631(1982). This general principle derives from the case or controversy requirement of Article III of the Constitution, which "subsists through all stages of federal judicial proceedings, trial and appellate ... the parties must continue to have a personal stake in the outcome of the lawsuit."Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990) (internal citations and quotations omitted). In other words, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. at 477(citations omitted).

DeFoy v. McCullough, 393 F.3d 439, 441-442 (3d Cir. 2005).

Applying this principle, courts have typically dismissed habeas petitions as moot where it is shown that the prisoner-petitioner has been released from the sentence which he is challenging, reasoning that when that sentence has been fully discharged a habeas petition attacking the sentence is no longer subject to redress in the courts. See, e.g., Marine v. Quintana, 347 F. App'x 736 (3d Cir. 2009); Scott v. Schuylkill, FCI, 298 F. App'x 202 (3d Cir. 2008); Scott v. Holt, 297 F. App'x 154 (3d Cir. 2008); Williams v. Sherman, 214 F. App'x 264 (3d Cir. 2007); Razzoli v. FCI

Allenwood, 200 F. App'x 166 (3d Cir. 2006). This principle has been specifically applied to petitions, like the petition advanced here by Ghertler, which seek to collaterally challenge the outcome of disciplinary prison proceedings that occurred in the course of a sentence which has now been fully served by the prisoner-petitioner. Marine v. Quintana, supra; Scott v. Schuylkill, supra; Scott v. Holt, supra. In such instances the inmate's completion of the underlying sentence renders moot any complaints about disciplinary hearings that were conducted while the prisoner served that sentence. Id. Nor can a prisoner-petitioner revive an otherwise moot claim through the simple expedient of being convicted on some new, and different, crime. See Razzoli v. FCI Allenwood, 200 F. App'x 166, 169 n.4 (3d Cir. 2006)(rejecting claim that new conviction revives habeas petition relating to previously served sentence). Indeed, drawing such an exception to the mootness doctrine would fly in the face of settled caselaw, and would actually reward criminal recidivists by giving them greater right to pursue otherwise stale and moot claims than the rights possessed by former prisoners who refrain from committing new crimes.

These settled principles apply here and compel dismissal of Ghertler's petition. That petition seeks to challenge a disciplinary hearing that occurred 4 ½ years ago, while Ghertler was serving a different federal sentence. Ghertler has fully discharged

all aspects of that sentence. Therefore, his complaints about that past sentence are no longer justiciable, and are moot.

In an apparent effort to avoid this outcome, Ghertler advances a new, and novel, claim in his traverse, arguing that he is actually innocent of the disciplinary citation of escaping from custody. (Doc. 8, pp.11-13.) Ghertler does not further explain what he means when he claims that he is innocent of escaping from the halfway house, and since he was not present or in custody at the halfway house at the time of these 2006 disciplinary proceedings, we regrettably have no contemporaneous explanation from the Petitioner of how Ghertler could be innocent of this infraction.

In any event, Ghertler's belated and factually unsupported claims of "actual innocence," (Doc. 8, p.11), cannot save this otherwise moot petition. The Supreme Court has made it clear that an assertion of "actual innocence" is not a free-standing constitutional claim that can afford habeas relief. Instead, a claim of actual innocence entitles a petitioner to habeas relief "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." Herrera v. Collins, 506 U.S. 390, 404-05 (1993 (quoting Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986)); see also Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) (a claim that a new witness came forward and asserted that someone other than the petitioner killed the victim was not a free-standing constitutional claim); Patton v. Cameron, No. 09-

10

CV-1178, 2010 WL 724007, at *12 n.2 (M.D. Pa. Mar. 1, 2010) (claim of actual innocence is not a free-standing constitutional claim entitling a petitioner to relief). Because we find that Ghertler has made no valid independent claim for habeas relief challenging a sentence which he has already fully served, his belated contention that he is actually innocent of escape simply does not supply a basis for granting the relief he seeks.  In sum, stripped to its essentials, Ghertler's claim of actual innocence consists of little more than a belated, and procedurally defaulted, effort to litigate claims that are otherwise procedurally barred. Such efforts, while often, made, are rarely successful and are, in fact, frequently rebuffed by the courts. See, e.g., Hutson v. Diguglielmo, 262 F. App'x 474 (3d Cir. 2008)(murder case, belated witness statements insufficient); Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004)(murder case, belated witness statement insufficient); Hubbard v. Pinchak, 378 F.3d 333 (3d Cir. 2004)(murder case, petitioner's belated statement insufficient). Because Ghertler has not made out a legitimate, independent and viable habeas claim at present, his stand-alone assertion that he is actually innocent of this disciplinary infraction does not supply a basis for habeas relief, and we, therefore,  must recommend that the Court deny Ghertler's habeas claims on this ground as well.

    In short, in this setting–where 4 ½ years have elapsed since Ghertler's escape; 4 years have passed since his release from custody on the sentence giving rise to that

escape; 38 months have intervened since new charges were lodged against him; 26 months have transpired since he was convicted of those new charges; 14 months have passed since his supervised release was revoked on his original charges based upon his new misconduct; and 6 months have elapsed since he completed service of this supervised release revocation sentence–Ghertler's claims about disciplinary hearings conducted while he served this original sentence are entirely moot and must be dismissed. See, e.g., Marine v. Quintana, 347 F. App'x 736 (3d Cir. 2009); Scott v. Schuylkill, FCI, 298 F. App'x 202 (3d Cir. 2008); Scott v. Holt, 297 F. App'x 154 (3d Cir. 2008); Williams v. Sherman, 214 F. App'x 264 (3d Cir. 2007); Razzoli v. FCI Allenwood, 200 F. App'x 166 (3d Cir. 2006).

### IV. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DISMISSED AS MOOT, and that a certificate of appealability should not issue. The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is

made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of April, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge